## In re MONTANA, W. & S. R. CO.
### No. 5001.

District Court, D. Montana.
March 16, 1940.

Royal E. T. Riggs, of New York City, John G. Brown and William A. Brown, both of Helena, Mont., for petitioner.

Before HANEY, Circuit Judge, and PRAY and BALDWIN, District Judges.

On December 16, 1939, there was presented the petition of the above-mentioned railroad for adjustment, pursuant to Chapter XV of the Act of Congress entitled, "An Act To establish a uniform system of bankruptcy throughout the United States", as amended, said Chapter XV having been approved July 28, 1939. 11 U.S.C.A. § 1200 et seq. The above-mentioned three-judge court was immediately assembled, which approved the petition as properly filed under said act by order dated January 11, 1940, and ordered notices to all interested parties returnable on March 15, 1940, by mailing and by publication and such notices as shown by the proof have been given.

No parties have appeared in opposition to the plan or with application to intervene. The plan of adjustment proposed to the court is simple.

By decision and order of the Interstate Commerce Commission, decided December 4, 1939, the plan of adjustment has already received the approval of the Inter-

state Commerce Commission, and has received, as shown by the proof, the approval of 84.9% of the first mortgage bonds of the petitioner, which is the only class of creditors of the petitioner outstanding which is affected by said plan.

The act provides, however, that this court shall scrutinize the facts independently of the extent of acceptances of such plan and of any lack of opposition thereto, and of the fact that the Interstate Commerce Commission has authorized the issuance or modification of securities as proposed by such plan, and the fact that the Commission has made findings similar to those that the act requires shall be made by this court before the plan may be approved. We have proceeded, therefore, to consider the evidence submitted by the petitioner, and to scrutinize the same.

The petitioner operates a small, independent railroad, lying wholly within Carbon County, Montana, extending from Bridger to Washoe, a distance of approximately 28 miles. In addition, it has 8.49 miles of switching track. It is entirely within the territorial jurisdiction of this court. The railroad was constructed by the Yellowstone Park Railroad Company in 1905 and 1906, primarily to serve the Bear Creek coal field, and the testimony shows that approximately 95% of the traffic transported by the railroad is coal. The Yellowstone Park Railroad Company never paid interest on its bonds and went into the hands of receivers in 1909, and, following a reorganization, the petitioner, organized under the laws of the State of New Jersey, took over the line and issued an aggregate of $900,000 principal amount of its First Mortgage Gold Bond, bearing interest at 5% per annum and maturing September 1, 1939, secured by a mortgage to the Empire Trust Company of New York as trustee. Since the date of its incorporation, the petitioner has never paid a dividend on its common stock. It has never failed to pay promptly when due the interest on all its bonds except as hereafter set forth, and has carried out a program of improving its property so as to satisfactorily serve the public and carry on its business as a common carrier. It has reduced its bonded indebtedness from $900,000 to $457,000 outstanding in the hands of the public by the purchase of bonds to the extent of $378,000, and the retirement of $65,000 additional principal amount through the sinking fund provided for by the mortgage. The $378,-000 principal amount of bonds purchased were acquired at a cost of $211,010.

The operation of the road is naturally divided by topography into sections, due to difference in grades and work to be performed in each. The first is the 12 miles from the point of connection with the Northern Pacific Railroad at Bridger to Belfry. This section of the track is in the Clark Fork valley and is now operated through a contract with the Northern Pacific Railroad, under which they run their power and crews through Bridger to Belfry, bringing up empty cars for their own locomotive coal, which they purchase in the Bear Creek coal field, and hauling out the coal from Belfry, which contract was submitted to the Interstate Commerce Commission for approval on December 12, 1932, and approved April 10, 1933, in an opinion and order of that Commission. Northern Pacific Railway Co. Operation, 189 I. C. C. 761.

The first mortgage bonds of the petitioner fell due on September 1, 1939, at a time when the refunding of outstanding obligations by a new issue of securities for the petitioner was financially impossible, and that is the only outstanding indebtedness from the inability to meet which the petitioner is suffering, all of its other outstanding debts and obligations for current expenses being paid promptly as they mature.

The plan of adjustment has been devised to solve the difficulty of the petitioner with respect to its first mortgage bonds maturing on September 1, 1939. Briefly, the plan, dated May 1, 1939, provides that the petitioner is to pay $150 in cash on account of the principal of each $1,000 bond outstanding in the hands of the public; that the time for the payment of the balance of the principal of the bonds as reduced be extended to September 1, 1949; that interest on the bonds as reduced be at the fixed rate of 3% per annum, plus non-cumulative contingent interest up to but not exceeding 2% in any one year dependent upon earnings; that the bonds are to be redeemable at the option of the company in whole or in part at anytime at their principal amount, plus accrued and unpaid fixed interest at the rate of 3% per annum; that the principal of and interest on the bonds be payable in lawful money of the United States instead of in gold coin; that payment on account of principal, extension and modification be made upon the terms and provisions set

forth in a supplemental indenture to be dated as of September 1, 1939, embodied as part of the plan as Exhibit A; that all bonds owned by the petitioner on September 1, 1939, be cancelled and retired.

At the time of the filing of the petition herein, on December 16, 1939, holders of bonds aggregating $384,000 principal amount, being 84% of the principal amount of the outstanding bonds in the hands of the public, had signified their acceptance and assent to the plan by executing written consent thereto in the form required by the plan and filed with the Empire Trust Company as trustee, and at the time of the second hearing hereon, March 15, 1940, the holders of $388,000 principal amount, amounting to 84.9% of the outstanding bonds in the hands of the public, had signified their assent to such plan.

Pursuant to Section 728 of Chapter XV, 11 U.S.C.A. § 1228, and pursuant to the order of this court filed February 16, 1940, notice of which was given as required by the order, the petitioner has made tender of payment to all bondholders affected by the plan of the sums currently payable to them equal to the amounts proposed to be paid under the plan, viz., $150 principal amount per $1,000 bond outstanding, plus 3% interest from September 1, 1939, to March 1, 1940, by depositing the sum of $75,405 with the Empire Trust Company as trustee in trust for the bondholders. The plan is therefore feasible as the petitioner has already made payment on account of the principal of the bonds called for by the plan and the first installment of the interest on extended bonds, and after making such payment, as of the close of business March 1, 1940, still had in cash approximately $84,306 and, in addition to cash, owned investments, costing $66,320, of the present market value of $72,000.

The testimony as to the probable prospective earnings of the company in the light of its earning experience and of such charges as may reasonably be expected, indicates that the petitioner will be able to meet the fixed charges of 3% upon the reduced principal amount of bonds to be outstanding upon the completion of the plan. The testimony likewise indicates that there is substantial equity for the stockholders of the petitioner above the $388,450 principal amount of bonds to be outstanding upon completion of the plan, and we believe the plan to be fair and equitable to both bondholders and stockholders. The bondholders under the plan are not required to reduce the principal amount of their holdings. Upon the maturity of their bonds on September 1, 1939, the bondholders were faced with the choice of receivership proceedings, foreclosure, acquiring and operating the property or of continuing the present obligation with only the fixed interest charge reduced and with a contingent interest charge, which, if the earnings are available, will yield them both the full principal and interest of their bonds without any reduction whatsoever.

From the evidence with reference to valuations previously made by this court (Montana, Wyoming & Southern R. Co. v. Morley, 198 F. 991) and the valuation made by the Interstate Commerce Commission in 1917 (Montana, Wyoming & Southern R. Co., 135 I. C. C. 257) and the amount of additions to betterment and equipment which have been made since those respective dates by the petitioner, and the cash and current assets, it is clear there is a very large equity for the holders of the common stock who, throughout the thirty years of the road's existence, have never received a dividend, as the earnings of the road have been used for additions and betterments, and the reduction of its indebtedness. Under these circumstances, we think that the facts of this case readily distinguish it from Case v. Los Angeles Lumber Products Co., Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. ——.

The Chandler Act requires that no plan shall be approved unless this court finds "that with respect to the continuation of, or any change in, the voting rights in the petitioner, control of the petitioner, and the identity of, and the power and manner of selection of persons who are to be directors, officers, or voting trustees, if any, upon the consummation of the plan and their respective successors, the plan makes full disclosure, is adequate, equitable, in the best interests of creditors and stockholders of each class, and consistent with 'public policy'". Sec. 725, 11 U.S.C.A. § 1225. The plan was dated May 1, 1939, and was prepared and sent to all security holders prior to the enactment of the act which was approved July 28, 1939. Hence, the plan itself makes no statement with reference to the continuation of the control of the petitioner. It may be inferred from the plan, therefore, that the outstanding stock is to control the petitioner subsequent to the confirmation of the plan as prior thereto. A

similar situation arose In re Baltimore & Ohio Railway Co., D.C., 29 F.Supp. 608, where the plan was silent as to future control of the petitioner, and had been prepared prior to the passage of the act, also the court there held that there was no real omission or defect in the plan with regard to full disclosure as to continued management, that it might be inferred from the plan that no change was intended with respect to future management and that an inclusion in the decree containing an explicit statement that the plan was to be construed as contemplating no change in continued management was sufficient without a formal modification of the plan and without necessity of resubmission of the plan, either to the Interstate Commerce Commission or to creditors.

In addition, it appears that the petitioner herein has mailed to all stockholders of record prior to the date of this hearing a specific notice calling attention to the Chandler Act provision above referred to and calling the attention of the bondholders to the fact that the plan provided that the voting rights in the company and the power to select directors was to continue in the holders of the common stock after, as before, the consummation of the plan. The said notice gave the names and directors of the company and the officers thereof, and the testimony shows that the management of the company has been under the control of substantially the same directors and officers for many years. In respect to such notice to the bondholders, there has been no response and there has been no criticism produced before this court of the management or intended future management of the petitioner. The petition and the testimony of the officers disclose that no change in voting control or management is contemplated.

We have no hesitation, therefore, in making the finding, required by the act, in the decree, that the plan makes full disclosure as to management.

We are filing herewith our findings embodied in a decree with reference to the matter.

We also are required to find that all payments made by the petitioner in connection with the plan are fair and reasonable and that full disclosure has been made of the reasons therefor. There has been submitted to us a complete list of all expenditures made by the railroad or contemplated to be made in connection with the plan, consisting of the trustees' fees, necessary legal fees, printing expenses, traveling, telegraph and telephone, and such like miscellaneous expenses. No compensation has been paid by the petitioner to any person for procuring acceptances of the plan by the creditors. We find that the schedule of expenses submitted by the petitioner are fair and reasonable.